**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **BURNEY VON MINDEN AND** | § | |
| **ERIC VON MINDEN** | § | |
| | § | |
| **V.** | § | **A-06-CA-823 LY** |
| | § | |
| **J.W. JANKOWSKI, Individually and in His** | § | |
| **Official Capacity as Sheriff of Washington** | § | |
| **County, WASHINGTON COUNTY** | § | |
| **SHERIFF'S DEPARTMENT,** | § | |
| **WASHINGTON COUNTY JAIL AND** | § | |
| **WASHINGTON COUNTY** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants' Rule 12(b)(2) Motion to Dismiss Plaintiffs' claims against

the Non-Jural Entities, filed on October 23, 2006 (Clerk's Docket No. 4);  Defendants' Motion to

Dismiss Pursuant to F.R.C.P. 12(b)(6), filed on October 23, 2006  (Clerk's Docket No. 5); Plaintiffs'

Motion for Summary Judgment, filed on November 2, 2006 (Clerk's Docket No. 10); Defendants'

Objection to Plaintiffs' Motion for Summary Judgment and Motion to Strike, filed on November 13,

2006 (Clerk's Docket No. 14);[1] Defendant J.W. Jankowski's Motion for Summary Judgment, filed

---

[1]Defendants move to strike Plaintiffs' Motion for Summary Judgment under Federal Rule of Civil Procedure 56 as "premature" under the Local Court Rules for the Western District of Texas. Defendants are mistaken.  Rule 56(a) specifically provides that "a party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." FED. R. CIV. P. 56(a).  Despite Defendants' contentions, nothing in the Local Court Rules prohibit a plaintiff from filing a Rule 56 motion before a Scheduling Order has been finalized in a case.  Accordingly, Defendants' **Motion to Strike Plaintiffs' Motion for Summary Judgment (Clerk's Docket No. 14) is HEREBY DENIED**.

on November 13, 2006 (Clerk's Docket No. 15); and the Parties' Briefs in response to the above motions.

On April 10, 2007, the District Court referred the above-matter to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the Parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. GENERAL BACKGROUND

On February 27, 2006, Burney Von Minden was arrested for possession of marijuana and was incarcerated as a pretrial detainee in the Washington County Jail for approximately one day. Approximately two months after he was released from Washington County Jail, on April 11, 2006, Burney Von Minden was denied permission to visit his son, Eric Von Minden, who was coincidentally incarcerated at the Washington County Jail (also as a pretrial detainee)[2] during the month of April 2006. *See* Plaintiffs' MSJ at p.1. Burney Von Minden was denied permission to visit his son due to a Washington County Jail visitation rule ("Visitation Policy") which provides that a person "who has been incarcerated in the Washington County Jail in the prior 6 months" is not eligible to visit a current inmate at the facility. Visitation Rule No. 11, Exhibit A to Defendants' MSJ at p.4.

On May 11, 2006, Burney Von Minden's attorney, Mark Polsky, notified the Sheriff of Washington County Jail, J.W. Jankowski, that Mr. Von Minden had been denied permission to visit

---

[2]Eric Von Minden was arrested for a probation violation.

his son and demanded that the Visitation Policy be repealed.  Exhibit A to Plaintiffs' Complaint. After the County notified Mr. Polsky of its refusal to repeal the Visitation Policy, Burney and Eric Von Minden (collectively "Plaintiffs") filed the instant civil rights lawsuit under 42 U.S.C. § 1983 in state court against J.W. Jankowski, individually and in his official capacity as Sheriff of Washington County, Washington County Sheriff's Department, Washington County Jail, and Washington County, Texas ("Defendants").  Plaintiffs allege that the Visitation Policy violated Plaintiffs' due process and equal protection rights under the Fourteenth Amendment and Plaintiffs' "freedom of association" rights under the First Amendment to the United States Constitution.

On October 11, 2006, Defendants removed this case from the 335th Judicial District in the District Court of Washington County, Texas to this court pursuant to 42 U.S.C. § 1331 and § 1446. Shortly thereafter, Defendants filed a Motion to Dismiss Plaintiffs' claims against the non-jural entities of Washington County Sheriff's Department and Washington County Jail (Clerk's Docket No. 4), as well as a Rule 12(b)(6) Motion to Dismiss this lawsuit for failure to state a claim upon which relief can be granted (Clerk's Docket No. 5).  In addition to the Motions to Dismiss, Plaintiffs and Defendant J.W.  Jankowski have filed cross Motions for Summary Judgment (Clerk's Docket Nos. 10 & 15).  The Court will now address these various motions.

## II.  ANALYSIS

### A.    Defendants' Motion to Dismiss the Non-Jural Entities

Defendants move the Court to dismiss Plaintiffs' claims against Washington County Sheriff's Department and Washington County Jail on the basis that these defendants are non-jural entities who do not have the legal capacity to sue or be sued.  Defendants have filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).  Rule 12(b)(2), however, is the vehicle used

by a defendant to argue that the district court does not have *personal jurisdiction* over the defendant, "which raises a question as to whether the controversy or the defendant has sufficient contacts, ties, or relationships with the forum to give the court the right to exercise judicial power over the defendant– an issue that typically implicates a jurisdictional statute or rule and quite frequently the Due Process Clause of the Constitution as well." 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1351 (3rd ed. 2004).  Because Defendants are arguing that Plaintiffs' claims against Washington County Sheriff's Department and Washington County Jail fail to state a claim under § 1983 (since those entities are non-jural entities), the proper vehicle for the instant Motion to Dismiss is Rule 12(b)(6), not Rule 12(b)(2).  *Id.; see also, Kundra v. Dallas County Jail*, 2007 WL 1159661 (N.D. Tex. April 19, 2007) (holding that non-jural entities should be dismissed with prejudice under Rule 12(b)(6)); *Hubert v. Hoel*, 2005 WL 3148548 (N.D. Tex. Oct. 19, 2005) (granting Rule 12(b)(6) motion to dismiss non-jural entities).  Accordingly, the Court will construe the instant Motion as a Motion to Dismiss under Rule 12(b)(6).  *See* 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1351 (3rd ed. 2004) ("the district court may adjudicate the motion and ignore the way it is captioned").

      1.    <u>Standard of Review</u>

      Under Federal Rule of Civil Procedure 12(b)(6), a district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  A plaintiff, however,

4

must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Finally, in ruling on a Motion to Dismiss, the court cannot look beyond the face of the pleadings. *Baker*, 75 F.3d at 196.

      2.    <u>Are Washington County Sheriff's Department and Washington County Jail Non-Jural Entities?</u>

It is well established that a plaintiff may not bring a civil rights claim against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Patterson v. Kaufman County Detention Center*, 2005 WL 1421813 at * 1 (N.D. Tex. June 13, 2005).  Thus, in *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991), the Fifth Circuit held that a local municipal police department had no independent capacity to be sued and thus lacked jural existence and could not be sued by former police officer.  In so holding, the Fifth Circuit reasoned the following:

> In order for a plaintiff to sue a city department, it must "enjoy a separate legal existence." Pursuant to these principles, we have held that a political subdivision cannot pursue a suit on its own unless it is "a separate and distinct corporate entity." Accordingly, our cases uniformly show that unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself.

*Id.* at 313-14 (internal citations omitted).  Because the plaintiff failed to show that the city ever granted its police department the capacity to engage in separate litigation, the Fifth Circuit determined that the lawsuit sought recovery from a legal entity that does not exist for the plaintiff's purposes.  Accordingly, the Court affirmed the district court's holding that the plaintiff's suit was brought against an entity with no jural existence, and hence, was subject to dismissal.  *Id.* at 314.

Similar to *Darby*, the Plaintiffs in the instant case have failed to show that Washington County has ever granted the Washington County Sheriff's Department or the Washington County

Jail the legal capacity to engage in separate litigation.  Thus, Plaintiffs' § 1983 lawsuit seeks recovery from "a legal entity that does not exist for [Plaintiffs'] purposes." *Id.*  Accordingly, Plaintiffs have brought this suit, in part, against entities with no jural existence who should be dismissed from this lawsuit.  *See Smith v. Porter*, 2006 WL 3325674 at *5 (N.D. Tex. Nov. 13, 2006) (dismissing claims against Dallas County Jail and Dallas County Sheriff's Office since they did not have the capacity to sue or be sued);  *Sullivan v. Chastain*, 2005 WL 354032 at *2 (W.D. Tex. Jan. 4, 2005) (dismissing Constables Office since it was a governmental entity without a separate jural existence and thus could not be sued);  *Patterson*, 2005 WL 1421813 at * 1 (dismissing claims against Kaufmann Detention Center since plaintiff failed to show that it had the capacity to be sued).

Based upon the foregoing, Washington County Sheriff's Department and Washington County Jail should be dismissed from the instant lawsuit.  Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss Non Jural Entities Washington County Sheriff's Department and Washington County Jail (Clerk's Docket No. 4).

**B.      Defendants' Motion to Dismiss/Motion for Summary Judgment**

Defendants argue that Plaintiffs' § 1983 lawsuit should be dismissed under Rule 12(b)(6) because Plaintiffs have failed to allege a deprivation of a constitutional right.  Defendants argue that there is no constitutional right of visitation and, therefore, Plaintiffs' have failed to allege a violation of a constitutional right.  Alternatively, Defendants argue that the Visitation Policy is reasonably related to the legitimate governmental objective of jail security and thus passes constitutional muster.

1.      Standard of Review

Before addressing the merits of Defendants' Motion, the Court must first determine the standard of review for reviewing the Motion.  Approximately one month after Defendants filed the instant Motion to Dismiss, Defendant J.W. Jankowski filed a Rule 56(c) Motion for Summary Judgment asserting his qualified immunity and submitting to the Court several attachments, including supporting affidavits and exhibits.  *See* Exhibits A-G to Defendant's MSJ (Clerk's Docket No. 15).  Further, Plaintiff filed his own (cross) motion for summary judgment, with attachments, on November 2, 2006 (Clerk's Doc. No. 10), and requested that the Court rely on that motion as a response to Defendants' motion to dismiss.  Because the parties have submitted matters outside the pleadings to the Court and the Court has not excluded such matters, the Court will convert Defendants' Motion to Dismiss into a Motion for Summary Judgment.  FED. R. CIV. P. 12(b).  Accordingly, the Court **HEREBY CONVERTS** Defendants' Motion to Dismiss (Clerk's Docket No. 5) into a Motion for Summary Judgment and will therefore apply the standard of review applicable under Rule 56(c).

Summary judgment is appropriate under Rule 56(c) only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-25 (1986).  The nonmovant may not rest upon allegations in the pleadings, but must set forth and support with summary judgment evidence facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57(1986).

All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the non-movant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

  2. <u>Plaintiffs' Claims</u>

   In this § 1983 lawsuit, Plaintiffs allege that their due process and equal protection rights under the Fourteenth Amendment and associational rights under the First Amendment were violated when they were deprived visitation privileges on the day of April 11, 2006.  As noted, Burney Von Minden (who had been incarcerated for one day as a pretrial detainee in late February 2006) was denied permission to visit his son Eric Von Minden (who was incarcerated as a pretrial detainee during the month of April 2006), since he qualified as "[a] person, who has been incarcerated in the Washington County Jail in the prior 6 months."  Visitation Policy, Exhibit A to Defendants' MSJ at p.4.  Plaintiffs argue that there is no legitimate penological interest for the Visitation Policy and they emphasize that as pretrial detainees, they were "both presumed innocent of all charges pending conviction."

   In order to state a claim under § 1983, a plaintiff must: (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Randolph v. Cervante*s, 130 F.3d 727, 730 (5th Cir. 1997), *cert. denied*, 525 U.S. 822 (1998).  Thus, the Court must first determine whether the Plaintiffs have alleged a violation of a constitutional right at all.

  3. *De Minimis* Injury?

   The Fifth Circuit has held repeatedly held that for convicted prisoners "[v]isitation privileges are a matter subject to the discretion of prison officials." *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999)  (rejecting convicted prisoner's claim that prohibiting him from visiting his mother on one

occasion amounted to cruel and unusual punishment in violation of the Eighth Amendment since the inmate "had no constitutional right to visitation privileges.") (quoting *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir.), *cert. denied*, 423 U.S. 859 (1975)).  Although Plaintiffs in this case were pretrial detainees as opposed to convicted prisoners,[3] the Supreme Court has also explained that for all pretrial detainees, "there is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979).

The Court finds that Plaintiffs' claims regarding the denial of one visitation session[4] qualifies as a *de minimis* level of imposition which does not rise to the level of a constitutional violation.  *See*

---

[3]This distinction is important because it determines whether the Due Process Clause or the Eighth Amendment is applicable to a petitioner's claims.  Because pretrial detainees have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right *not to be punished* for that crime.  *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).  "A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."  *Id.*  The Supreme Court has described the distinction as follows:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.  [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.  *Ingraham v. Wright*, 430 U.S. 651, 671-672, n.40 (1977) (internal citations omitted).

Thus, when a pretrial detainee is challenging a condition of confinement, the Due Process Clause – and not the Eighth Amendment – is applicable to the claims.

[4]Although Plaintiffs complain about the Visitation Policy in general – which would have been applicable to Plaintiffs for the month of April 2006, during Eric Von Minden's incarceration– Plaintiffs' Original Petition only alleges that Mr. Von Minden was officially denied permission to visit his son on the day of April 11, 2006.  *See* Plaintiffs' Original Petition and Exhibit A to that Petition.

*Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (relying on *Wolfish* to hold that a detained parolee's allegations that he was denied visitation, telephone access, recreation, mail, legal material sheets, and showers for a three-day period were considered *de minimis* and thus detainee's allegations failed to give rise to a constitutional violation and were subject to dismissal for frivolousness); *Williams v. Smith County Jail*, 2007 WL 527953 at * 6 (E.D. Tex. Feb. 14, 2007) (holding that denial of visitation on one occasion did not violate pretrial detainee's constitutional rights).[5]

    4.    <u>Pretrial Detainees and Rights to Visitation</u>[6]

The Defendants make the alternative argument that, even if the Plaintiffs' Petition does in fact allege more than a *de minimis* injury, the Visitation Policy is constitutional, and thus the Plaintiffs' claims should be dismissed on this ground as well.

Before specifically addressing the constitutionality of the Visitation Policy at issue, the Court will first review the general constitutional concerns regarding visitation in the prison context. Unlike convicted prisoners,[7] pretrial detainees have a right under the Due Process Clause of the Fourteenth

---

[5] *See also*, *Charles v. Nance*, 2006 WL 1752486 at 1 (5th Cir. June 21, 2006) (in the convicted prisoner context, finding that "[t]he denial of a single visit does not give rise to a constitutional violation").

[6] Plaintiff Burney Von Minden was no longer incarcerated at the time he attempted to visit his son and thus he would not be considered a pretrial detainee or a convicted inmate, but merely a potential jail visitor. However, as explained in detail below, the same test will be applied to both Plaintiffs to determine whether their constitutional rights were violated. *See Overton v. Bazzetta*, 539 U.S. 126 (2003) (applying the same test (whether the regulation bears a rational relation to legitimate penological interests) to state prisoners and their prospective public visitors' claims under the First, Eighth and Fourteenth Amendment).

[7] *See Kentucky Dept' of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) ( "The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause.").

Amendment not to be punished.  In *Bell v. Wolfish*, 441 U.S. 520 (1979), the United States Supreme Court considered for the first time the scope of constitutional protection that must be accorded pretrial detainees.  The respondents in *Wolfish* challenged numerous conditions of their confinement at the pretrial detention facility in New York City and various policies and practices of that institution.  The Supreme Court held that, where it is alleged that a pretrial detainee has been deprived of liberty without due process, the dispositive inquiry is whether the challenged condition, practice, or policy constitutes "punishment," since "under the Due Process Clause, a detainee must not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535

The Supreme Court was careful to note that not every restriction imposed during a pretrial detainee's detention amounts to "punishment" in the constitutional sense:

> Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

*Id.* at 537.

In determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment, courts "must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538.  Absent proof of intent to punish, the Court found that this determination will generally turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable

11

for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. " *Id.* (internal citations and quotations omitted).  The Supreme Court summarized the test that district courts should apply in determining whether a particular prison restriction amounts to an unconstitutional punishment:

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal–if it is arbitrary or purposeless–a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

*Id.* at 539.

In establishing these guidelines, the Court reaffirmed the very limited role that courts should play in the administration of detention facilities.  In determining whether a specific restriction is "reasonably related" to security interests, the Court declared that courts "heed our warning that [s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters.'" *Id.* at 584-85.  The Court further cautioned that "prison administrators [are to be] accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 585.

In *Block v. Rutherford*, 468 U.S. 576 (1984), the Court applied the *Wolfish* standard – whether the regulation is reasonably related to legitimate governmental objectives – to uphold a blanket prohibition against contact visitation for pretrial detainees at the Los Angeles County Central

Jail.  The Court found that there was a valid, rational connection between the ban on contact visits and the internal security of the detention facility.  The Court noted that "[c]ontact visits invite a host of security problems" such as opening up the institution to the introduction of drugs, weapons, and other contraband, as well as jeopardizing the safety of family, friends and jail administrators.  *Id.* at 586.  Accordingly, the Court concluded that the blanket prohibition on contact visitation "is an entirely reasonable, nonpunitive response to the legitimate security concerns identified, consistent with the Fourteenth Amendment."  *Id.* at 588.

     5.     <u>First Amendment Right to Association and Visitation</u>

   In the First Amendment context, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Thus, "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law."  *Id*.

   In *Overton v. Bazzetta,* 539 U.S. 126 (2003), a class of state prisoners and their prospective visitors brought a § 1983 lawsuit against the Michigan Department of Corrections, alleging that restrictions on prison visitation (including a ban on former prisoners visiting current inmates unless an immediate family member) violated their rights under the First, Eighth, and Fourteenth Amendments.  In addressing the issue of whether the restrictions infringed a constitutional right of association, the Court noted that although it had discussed in some of its prior non-prisoner cases of "a right to maintain certain familial relationships, including association among members of an

13

immediate family," the Court declared that "this [a prisoner rights case] is not an appropriate case for further elaboration of those matters." *Id.* at 131. The Court reasoned:

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.

*Id.*

Although the Court did not hold that any right to association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners, the Court concluded that it "need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests." *Id.* at 131-132. [8] Thus, the Court applied the same test as it did in *Wolfish* – whether the regulation is reasonably related to legitimate penological interests – to determine whether the visitation policies were constitutional. Because the Court found that the regulations were rationally related to legitimate penological interests, the Court held that the restrictions on visitation did not violate the state prisoners or their prospective visitors' constitutional rights.

Accordingly, regardless of whether the Plaintiffs rely on the Fourteenth (due process or equal protection clauses) or First Amendment in this case, the Court will apply the same test to determine

---

[8]*Compare to Thorne v. Jones*, 765 F.2d 1270, 1272 & n.6 (5th Cir. 1985) (rejecting mother's proposition that she had an absolute right under the First Amendment to visit her sons), *cert. denied*, 472 U.S. 1016 (1986); *Toppins v. Day*, 2003 WL 21757342 (5th Cir. June 26, 2003) (relying on *Thorne* to dismiss prisoner's First Amendment freedom of association claim since he "maintains no right to simple physical association . . . grounded in the First Amendment); *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977) (holding that potential visitors had no constitutional right to prison visitation).

whether the Visitation Policy is constitutional: whether the Visitation Policy "is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (clarifying that the standard to be applied for evaluating whether a prison regulation affecting a constitutional right withstands a constitutional challenge is whether "the regulation is valid if it is reasonably related to legitimate penological interests").

      6.     <u>Is the Visitation Policy reasonably related to a legitimate governmental interest?</u>

In making the determination of whether the Visitation Policy at issue is reasonably related to a legitimate governmental interest, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132. "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Id.*

The Supreme Court has held that four factors are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: (1) whether the regulation has a "valid, rational connection" to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are "ready alternatives" to the regulation. *Turner*, 482 U.S. at 89 (1987). The Court will now apply these factors.

a      <u>Does the Policy have a rational connection to a legitimate government interest?</u>

Defendants contend that they have promulgated the Visitation Policy for the purposes of public safety and jail security. There is no dispute that internal security of detention facilities is a legitimate governmental objective. *Block*, 468 U.S. at 586. Accordingly, the Court's inquiry in this case is simply whether the Visitation Policy has a valid, rational connection to the security of that facility.

As the Supreme Court has found, a prison or jail regulation "prohibiting visitation by former inmates bears a self-evident connection to the State's interest in maintaining prison security and preventing future crimes." *Overton,* 539 U.S. at 133. See also, *Turner*, 482 U.S. at 91-92 (holding that prohibition on inmate-to-inmate correspondence was logically connected to legitimate security concerns).[9] The Supreme Court has explicitly recognized that "communication with other felons is a potential spur to criminal behavior." *Overton,* 539 U.S. at 134. Defendants point out that inmates who are jailed together in the same facility often try to plot escapes, retaliate against other inmates, and import contraband. Defendants further note that released inmates are in a much better position to help facilitate an escape from the outside of the prison and to provide aid an information to current inmates regarding jail operations.

___

[9]*See* also, *Block*, 468 U.S. at 588 (holding that Los Angeles County Central Jail's blanket prohibition on contact visitation for pretrial detainees did not violate the Fourteenth Amendment since it was reasonably related to the legitimate objective of maintaining internal security at the jail); *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1392 (5th Cir. 1995) (holding that pretrial detainee's constitutional rights were not violated by the prison's revocation of detainee's in-house visitation privileges since revocation reasonably related to the maintenance of prison security); *Hadamek v. Quarterman*, 2007 WL 1039489 at *10 (S.D. Tex. March 31, 2007) (holding that visitation policy at county jail which limited visitation to persons related "by blood or by law" were related to the legitimate governmental objective of prison safety).

16

The fact that Plaintiffs were pretrial detainees who had not been convicted of any crimes at the time they were denied visitation privileges does not mean that they were not a security risk.  As the Supreme Court has stated, "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates" and "[i]ndeed, it may be that in certain circumstances they present a greater risk to jail security and order," including "a greater risk of escape than other inmates."  *Wolfish*, 441 U.S. at 547 n.28.

Based upon the foregoing, the Court finds that there is a valid, rational connection between the six-month ban on visitation between former and current inmates at Washington County Jail and the security of that facility.

> b.   <u>Alternate means of communication</u>

The Visitation Policy at issue is only applicable for a six month period and does not prevent inmates or detainees from communicating with former inmates by letter or telephone.  *See* Exhibit B to Plaintiffs' Petition.  While these alternative means of communication may not be as appealing as face-to-face visitation, "[a]lternatives to visitation need not be ideal; however; they need only be available." *Overton*, 539 U.S. at 135.  Moreover, the policy does not entirely seal the inmate/detainee from face-to-face communication with individuals who are not former inmates of the facility.  Thus, this provides another alternative avenue of communication between current inmates/detainees and individuals outside the facility. *See Pell*, 417 U.S. at 825 (upholding visitation restriction where restriction provided "another alternative avenue of communication between prison inmates and persons outside the prison.").  Accordingly, this factor also supports a finding that the regulation is reasonably related to the legitimate government objective of jail security.

> c.   <u>Impact of accommodating Plaintiffs' demands</u>

Another relevant consideration is the impact that the accommodation of the asserted constitutional right would have on guards, other inmates, the allocation of prison resources, and the safety of visitors. In *Overton*, the Supreme Court held that prisoners' demands to permit visitation by former inmates would cause a significant reallocation of the prison system's financial resources and would impair the ability of the corrections officers to protect "all who are inside the prison's walls." 539 U.S. at 135. The Court similarly finds that accommodating Plaintiffs' demand to repeal the Visitation Policy would impair the ability of prison officials to maintain safety and internal security. Washington County Jail officials have stated that it is their opinion that permitting face to face visitation between recent inmates and current inmates would interfere with the internal security of that facility as well as the safety of the general public. When such safety concerns are present, courts should be "'particularly deferential' to prison administrators' regulatory judgments." *Id.* Thus, this factor also weighs in favor of a finding that the Visitation Policy is reasonably related to the legitimate government objective of jail security.

      d.    <u>Alternatives to the Policy</u>

Finally, the Court considers whether the presence of ready alternatives undermines the reasonableness of the regulation. *Overton,* 539 U.S. at 136. The Court need not look to the least-restrictive-alternative test, but instead must focus on "whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Id.* Plaintiffs have not suggested alternatives meeting this high standard for the regulation at issue. In fact, in *Overton*, the Supreme Court rejected the inmates' suggestion that a limitation on visitation by former inmates could be time limited since the Court found that it should "defer to [the Department of Corrections'] judgment that a longer

18

restriction better serves its interest in preventing the criminal activity that can result form these interactions." *Id.* The fact that the limitation on visitation by former inmates in the instant case is in fact time-limited (to a period of six months) also supports a finding that the regulation is reasonable and not excessive when balanced against the legitimate safety concerns of the Washington County Jail. In any event, the Court is unwilling to substitute its judgment "on these difficult and sensitive matters of institutional administration and security" for the decisions made by the administrators of the Jail, "the persons who are actually charged with and trained in the running of such facilities." *Block*, 468 U.S. at 588 (internal citations and quotations omitted).

Based upon the foregoing, the Court finds that the six-month ban on visitation between current and former inmates is reasonably related to the legitimate governmental objective of jail security and thus does not violate Plaintiffs' constitutional rights. Accordingly, the Court RECOMMENDS that the District Court GRANT Defendants' Motion for Summary Judgment (Clerk's Docket No. 5) in its entirety and dismiss all of Plaintiffs' claims in this lawsuit. Because there are no remaining claims in this lawsuit, the Court will also recommend that all remaining substantive motions in this case (Clerk's Docket Nos. 10 & 15) be denied as MOOT.

### III. RECOMMENDATION

Based upon the foregoing, the instant Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss Non-Jural Entities Washington County Sheriff's Department and Washington County Jail (Clerk's Docket No. 4). The Court **FURTHER RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (construed as a motion for summary judgment) (Clerk's Docket No. 5) in its entirety and dispose of all claims against Washington County, Texas, and J.W. Jankowski, Sheriff of Washington County, Texas, in

his Individual and Official Capacities.  The Court **FURTHER RECOMMENDS** that the District Court **DENY** Plaintiffs' Motion for Summary Judgment (Clerk's Docket No. 10) and Defendant J.W. Jankowski's Motion for Summary Judgment (Clerk's Docket No. 15) as **MOOT.**

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).  To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this the 3rd day of July, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE